VERNON SELDE AND BETTY JANE SELDE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Selde v. Commissioner
Docket No. 1802-78.
United States Tax Court
T.C. Memo 1980-222; 1980 Tax Ct. Memo LEXIS 363; 40 T.C.M. (CCH) 533; T.C.M. (RIA) 80222; June 25, 1980, Filed Vernon and Betty Jane Selde, pro se. Kenneth W. McWade, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined the following income tax deficiencies and additions to tax for fraud (section 6653(b)) [1] for the following years: [2]
Years
Deficiency
Sec. 6653(b) additions
1974
$ 4,522
$ 2,261
1975
2,241
1,211
The issues for decision are: 1. Whether petitioner-husband's Civil Service disability pension is excludible from gross income to the extent of the excess *365 thereof over $5,200. 2. The amount, if any, of petitioners' deductible employee business expense. 3. Whether petitioners received unreported interest income of $135 in 1974 and $651 in 1975. 4. The amount of petitioners' capital gains and losses during 1974 and 1975. 5. The amount of charitable contributions petitioners are entitled to deduct in 1974. 6. The amount of petitioners' medical deductions for 1974 and 1975. 7. Whether petitioners are liable for additions to tax for fraud in 1974 and 1975. 8. Whether additions to tax for fraud should be reduced by one-half because of the community property nature of petitioners' earned income. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners are husband and wife and resided in Walla Walla, Washington, at the time they filed their petition. Petitioner Betty Jane Selde is a party solely by virtue of having filed a joint return with her husband. When we refer to "petitioner" herein we shall be referring to Vernon Selde. Petitioner did not include in income on his income tax returns for 1974 and 1975 any portion of his Civil Service disability pension of $12,624 *366 in 1974 and $14,365 in 1975. On his original 1974 return petitioner reported and deducted $540 as sick pay. On his amended 1974 return petitioner reported and deducted $5,200 as sick pay. On his 1975 return petitioner again claimed $5,200 as sick pay. From September, 1973, to August 30, 1974, petitioner was employed as a civil engineer in the Inspection Department of the United States Testing Company at Richland, Washington. Petitioner was entitled to be reimbursed by United States Testing Company for travel incurred in connection with company business at the rate of 12" per mile traveled by private automobile. During 1974 petitioner was reimbursed $1,464.40 by United States Testing Company for travel in his own car in connection with company business. On his 1974 return petitioner claimed business travel expenses of $4,920.Petitioner's travel schedule showed he traveled 11,453 miles in his personal car on United States Testing Company business in 1974. Petitioners received interest income of $135.09 in 1974 and $650.73 in 1975 from the Walla Walla Engineers Federal Credit Union. Petitioners claimed a $990 capital loss on the sale of "Redmond Industries Stock" on their *367 1974 return and a $980 capital loss on the sale of "WinnebagoInd. stock" on their 1975 return. In fact, for the year 1974 petitioners had no capital gains or losses and for the year 1975 they had the following capital gains and losses: Stock
Gain or Loss
Waste Mgt.
$ 656.65 short-term capital gain
Boise Cascade
692.99 long-term capital gain
Myers Comp.
(189.27) short-term capital loss
On their 1974 return petitioners claimed charitable contributions of $1,170. Respondent has allowed $143.10 and had disallowed the rest for lack of substantiation. Petitioner made charitable contributions in 1974 or $143.10. Respondent disallowed $920 of medicine and drugs claimed on petitioners' 1974 return and $863 of medicine and drugs and $544 of "other" medical expenses claimed on petitioners' 1975 return. Petitioners spent $11.45 on prescription drugs in 1974 and $71.24 on prescription drugs in 1975. Petitioner told the auditing revenue agent during the audit of petitioner's 1974 and 1975 returns that he had no savings account in 1974 and 1975 and no interest income to the best of his knowledge. Petitioner provided the revenue agent with three Goodwill Industries *368 receipts showing three donations in 1974 with the values of $200, $130 and $100. Petitioner stated that Goodwill Industries placed the values on the receipts. Goodwill Industries' records showed that petitioner made two contributions during 1974 and that Goodwill Industries did not put any value on the receipts. Goodwill Industries did not have a record of the alleged donation of an air conditioner. Petitioner also provided the revenue agent with two altered checks as proof of charitable contributions. One check was altered by increasing the amount of the check from $3.75 to $43.75, and the other check was altered by changing the year from 1972 to 1974. Petitioner falsely claimed employee business expense deductions in 1974 for amounts for which he received reimbursement from his employer. Petitioner falsely claimed capital losses in 1974 and 1975 when in fact he did not suffer any capital losses in 1974 and actually realized a net capital gain in 1975. OPINION I. Omissions from income. A. Civil Service disability pay. Petitioner did not include in gross income for either 1974 or 1975 any part of his disability pension payment of $12,624 in 1974 and $14,365 *369 in 1975. On his original 1974 return he claimed a sick pay adjustment of $540, and on his amended 1974 return he claimed a $5,200 sick pay adjustment. He also claimed a $5,200 sick pay adjustment for 1975. Respondent in his statutory notice included the disability pension payments in income in 1974 and 1975 (section 61(a)(11)) and allowed a sick pay exclusion of $5,200 in each year (section 105(d)). Petitioner's argument against the inclusion of the disability pension payments in gross income appears to be that the payments represented a recovery of employee contributions under the Civil Service Retirement System and that he made an election under section 105(d)(7) as it appeared prior to the enactment of the Revenue Act of 1978 (section 701(c)(1), Pub. L. 95-600, 92 stat. 2779), to have payments treated as a non-taxable return of employee contributions under section 72(d). However, petitioner could not make such an election prior to 1977. Sec. 105(d)(7) was added by sec. 505(a), Pub. L. 94-455, 90 Stat. 1566, as amended by sec. 301, Pub. L. 95-30, 91 Stat. 151, effective for years after December 31, 1976. The years in issue are 1974 and 1975. Therefore petitioner must *370 include in gross income the amounts he received as disability annuity during 1974 and 1975 and is entitled to the maximum allowable sick pay adjustments of $5,200 in each of 1974 and 1975. B. Interest. Petitioners received $135.09 in 1974 and $650.73 in 1975 as interest from the Walla Walla Engineers Federal Credit Union. Petitioners failed to include these amounts in their 1974 and 1975 returns.Such amounts are includible in petitioners' 1974 and 1975 gross income. C. Capital Gains. On petitioners' 1974 and 1975 returns they claimed capital losses of $990 and $980, respectively. During trial petitioners produced no evidence to support their claimed capital loss on the alleged sale of Redmond Industries stock in 1974 or Winnebago Industries stock in 1975. Petitioners' records with Blyth Eastman Dillon & Co. instead indicated no transactions in 1974 and the following transactions in 1975: Stock
Gain or Loss
Waste Mgt.
$ 656.65 short-term capital gain
Boise Cascade
692.99 long-term capital gain
Myers Comp.
(189.27) short-term capital loss
Accordingly, petitioners are not entitled to a capital loss in 1974 and must report the above-noted *371 transactions for 1975. II. Overstated Deductions. A. Business expense deductions. On the 1974 return petitioner claimed a deduction for business travel while an employee of United States Testing Company. In fact, petitioner's travel expenses at United States Testing Company were reimbursed by the company. Petitioner failed to prove that he incurred business expenses in excess of those reimbursed by United States Testing Company. Therefore, petitioner is not entitled to any business travel deduction.
B. Charitable contributions. Petitioner claimed charitable contributions of $1,170 on the 1974 return, of which respondent allowed $143.10. Petitioner produced no credible evidence to substantive any additional contributions over the amount allowed by respondent. Instead petitioner relied on altered checks and on erroneous claims that Goodwill Industries' receipts evidenced values placed on the donations by Goodwill Industries. We hold that petitioner is not entitled to any charitable deduction in 1974 in excess of the amount allowed by respondent. C. Medical expenses.
Petitioner claimed drug expenses of $920 in 1974 and $863 in 1975, and "other" *372 medical expenses in 1975 of $544. Respondent disallowed these claimed expenses for lack of substantiation. Petitioner produced evidence at trial which substantiated drug expenses of $11.45 in 1974 and $71.24 in 1975. Other records introduced by petitioner indicate only that other items were purchased at this large drug store (Eastgate Drug) where petitioner traded. Although petitioner claimed that most items purchased were non-prescription drugs, we are not persuaded that this is the case. Petitioner introduced checks written by his wife to Eastgate Drugs on which he had later written "N.P. Drugs." In view of petitioner's lack of trustworthiness, including his alteration of documents, we do not find these exhibits sufficiently persuasive to carry his burden of proof that in fact the amounts shown on the checks were spent for medications. III. Fraud Penalty. Respondent determined a fraud penalty for each of 1974 and 1975. On this issue respondent bears the burden of proof. Section 7454(a). For the years 1974 and 1975 petitioner not only omitted interest income from the returns but told the revenue agent auditing his returns that to the best of his knowledge he had *373 no savings accounts in 1974 and 1975 when in fact he had an account at Walla Walla Engineers Federal Credit Union. The level of activity in petitioner's savings account makes it improbable that petitioner's failure to include the interest income from the account was due to mere negligence. For each of the years 1974 and 1975 petitioner claimed capital loss from the sale of shares of stock. Yet petitioner was unable to produce any proof he ever owned or sold the stock allegedly sold in those years. In fact petitioner sold other stocks in 1975 which sales resulted in his having a net gain for the year. These sales were not reported on his return. Further, petitioner claimed $4,920 for employee business expenses when the proof at trial shows that those expenses he did incur were reimbursed in toto by his employer. Finally, petitioner presented altered documents to the revenue agent in his effort to substantiate his claimed charitable deductions in 1974. In view of all these facts, we conclude that petitioner's underpayment of tax for 1974 and 1975 was due to fraud, and the respondent correctly determined that petitioner is liable for the 50% fraud penalty imposed by section *374 6653(b). Finally, petitioners argue that the fraud penalty should be applied to only one-half of the understatement of income instead of to the whole understatement of income since there is no indication Betty Jane Selde participated in the fraudulent behavior and petitioners' income is community property. In Kwong v. Commissioner,65 T.C. 959 (1976), we held that where a joint return has been filed and the income was community property the liability for the addition to tax was to be computed on the entire underpayment even though only one spouse may be liable for payment of the penalties. This case is indistinguishable from Kwong. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue. ↩
2. By amended return (Form 1040X) filed January 12, 1976, petitioners claimed an overpayment for 1974 of $2,496. Respondent refunded $1,573 based on petitioners' original 1974 return.↩